UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| JAMES KENT RICHEY, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 5:10-CV-412-KSF |
| v. | ) | RECOMMENDED DISPOSITION |
| NORTH ATLANTIC EXTRADITION SERVICES, | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Pursuant to 28 U.S.C. § 636(b)(1)(B), the District Court referred to the undersigned Defendant's motion for summary judgment (DE #30) and Plaintiff's motion for leave to file an amended complaint (DE #31). DE #34 (Order). The parties have fully briefed the motions. *See* DE #38 (Order); DE #40 (response to motion for summary judgment); DE#42 (reply in support of summary judgment), DE #43 (addendum to response to motion for summary judgment)[1]; DE #37 (response to motion for leave). Having reviewed the parties' memoranda and the record, for the reasons and on the terms set forth below, the Court **RECOMMENDS** the District Court **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (DE #30) and **GRANT IN PART** and **DENY IN PART** Plaintiff's motion for leave to file an amended complaint (DE #31).

---

[1] On October 12, 2011, Richey filed an addendum to his response to submit his wife's declaration, which he inadvertently failed to attach to his response, and Franklin County Jail records he allegedly found after filing his response. DE #43 (Addendum). Although Richey did not seek leave to file the addendum, the Court considers the filing in the interest of rendering a decision based on a complete record.

1

**I.     Relevant Background**[2]

Richey was arrested on December 8, 2009, in Ottawa, Franklin County, Kansas, on a parole violation warrant tied to a Kentucky conviction. DE #2 (Complaint), ¶ 5; DE #40-1 (James Kent Richey Declaration ("Richey Dec.")), ¶ 2; DE #30-3 (James Kent Richey June 21, 2011, Deposition Transcript ("Richey Depo.")), at 31-32. Richey claims he suffers from epilepsy, and at that time he purportedly took the prescription medication Dilantin about once per day to prevent seizures. Richey Depo. at 38; Richey Dec., ¶ 3. Most recently, the Kentucky Department of Corrections prescribed Richey Dilantin sometime prior to his state release in 2005. *See* Richey Depo. at 25-28. After Kentucky released Richey in 2005, a relative provided him with refills. *Id.* No physician has prescribed Richey Dilantin since his discharge from Kentucky state custody in 2005. *Id.* at 29-30; 37. Still, he claims to have and regularly take the medication.

When Richey was arrested in Kansas on December 8, 2009, the arresting officers did not allow him to bring Dilantin with him to the Franklin County Jail. *Id.* at 33. However, Richey reported to the Franklin County Sheriff's Office that he suffers from epilepsy and was currently taking the prescription medication Dilantin. DE #43-3 (Medical Admission Record Form); Richey Dec., ¶ 3. The jail provided Dilantin to Richey twice. Richey Depo. at 33-34; Richey Dec., ¶ 7. The Franklin County Jail also placed Richey on seizure watch for "epilepsy." Richey Dec., ¶ 6; DE #43-2 (15 Minute Watch Sheet).

On December 10, 2009, two employees of Defendant NAES, a private prisoner transport company, picked Richey up to transport him to Kentucky on the state's warrant. DE #2 (Complaint), ¶¶ 2, 5-6; Richey Dec. ¶¶ 8-9. According to Richey, the NAES employees who

---

[2] The Court, as it must, construes the evidence and draws all inferences in favor of Richey, the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

2

picked him up refused to take from the Franklin County Jail Dilantin to administer during the trip:

> Q. Okay. When you were released from the Franklin County Jail, were you released with any medication?
>
> A. No, I wasn't. The officer that picked me up said they were not allowed to take medication with them.
>
> Q. Okay. You mean the officer from NAES?
>
> A. Yes, sir.
>
> Q. All right. And did he have that conversation with you? Did he have that conversation with another officer at the Franklin County Jail?
>
> A. With me and the officer that was helping me get ready, making me change my clothes and stuff. We were both standing right there. And I explained to him that I had epilepsy and that I had to have my medicine.
>
> Q. Okay. Did the officer from the Franklin County Jail attempt to give the officer at NAES any medication?
>
> A. He told him -- the officer of NAES just told him that he was not allowed to take any medicine, so no, there was none exchanged.
>
> Q. Did -- did you request that the medicine come with you?
>
> A. Yes, I did.

Richey Depo. at 42-43; *see also* DE #2, ¶¶ 8-9; Richey Dec., ¶ 10. According to Connie Jacobs, a records clerk at the Franklin County Jail, the jail does not have any records indicating that anyone at the jail gave Richey Dilantin or that the jail offered to release Richey with any medication. DE #30-2 (Connie Jacobs Affidavit). Richey's deposition, as noted, differs, as does his submitted affidavit. *Compare id. with* Richey Depo. at 33-34, 42-43, *and* Richey Dec., ¶¶ 7-9.

Richey was wearing only shorts, a t-shirt, socks, and flip-flops when he left the Franklin County Jail. Richey Depo. at 46. Authorities originally arrested him in that attire. *Id.* at 32. He did not have warm clothing or a blanket. *Id.* at 42-43; DE #2, at ¶ 7. Richey was handcuffed, shackled, and waist-chained during transport. Richey Depo. at 44; DE #2, ¶ 18; Richey Dec., ¶ 11. There were no seatbelts in the prisoner area of the transport van. Richey Depo. at 44; DE #2, ¶ 15; Richey Dec., ¶ 12. Although the van was heated, the prisoner area received heat only through a rigged dryer vent hose that ran from the front of the vehicle to the back. Richey Depo. at 45; DE #2, ¶¶ 13, 14. The temperature outside was well below freezing. DE #2, ¶¶ 13, 25 ("sub-zero temperatures"); Richey Dec., ¶ 13. Richey and the other inmates in the van complained about the insufficient heat, but the only response was to eventually provide blankets to the prisoners. Richey Depo. at 45-46; DE #2 ¶ 16. However, there were not enough blankets for all prisoners, and Richey did not get a blanket. Richey Depo. at 46. Richey told an NAES employee he was freezing and had no shoes. DE #2, ¶ 16. The van driver told Richey that it was company policy to not provide prisoners with clothing or shoes. DE #2, ¶ 17.

Richey suffered two consecutive seizures during transport. Richey Depo. at 48; Richey Dec., ¶ 15; DE #2, ¶ 21. They occurred one after the other when the van was just outside Minnesota. Richey Depo. at 48. The first seizure was mild, but the second was more severe and caused Richey to fall off the bench to the van floor. *Id.* Richey complains he suffered an injury to his left arm and fingers and hit his head in the fall. *See id.* at 56; DE #2, ¶ 24. The driver of the van pulled over, opened the back door, and asked Richey if he was all right. Richey Depo. at 48-49. Richey responded he was "all right now," and told the NAES employee he needed his medicine. *Id.* at 49. According to Richey, requesting his medicine equated to asking to see a doctor, because he would have to go to a provider to get Dilantin. *Id.* The employees did not

4

offer to take Richey to see a doctor. *Id.*; Richey Dec., ¶ 16. Richey claims he also suffered frostbite to his left foot during the trip from Kansas to Mississippi due to inadequate heat and/or clothing. *See* Richey Depo. at 55.

NAES maintains a contract with the Clay County Jail in West Point, Mississippi, to allow NAES to house prisoners in transit. DE #2, ¶ 26; Richey Dec., ¶ 18. NAES employees operate the transport wing. *Id.* When Richey arrived at the Clay County Jail, he informed jail employees of his epilepsy and need for Dilantin. Richey Depo. at 51. The jail employees told Richey NAES was responsible for providing Richey any medication he needed. Richey Dec., ¶ 19. Richey did not report that he had suffered seizures and fallen in the van on the way from Kansas to Mississippi. Richey Depo. at 52-53. Richey stayed at the Mississippi jail for two days. DE #2, ¶ 27. The NAES employees at the jail in Mississippi refused to give Richey Dilantin despite his repeated requests for the medication. DE #2, ¶¶ 28, 29.

Richey claims a second van transported him from Mississippi to Kentucky, and that vehicle also lacked seat belts and had limited heat in the back, this time provided via a PVC pipe running from the front. Richey Depo. at 85. The drivers of that van – two different NAES employees – also told Richey that company policy prohibited them from giving Richey prescription medication. Richey Dec., ¶ 21. Richey arrived at the Louisville Detention Center on or about December 17, 2009. Richey Depo. at 57-58.

On December 1, 2010, Richey filed a verified[3] lawsuit against NAES alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment by virtue of (1) deliberate indifference to Richey's serious medical needs by refusing to administer Dilantin, and (2) deliberate indifference to Richey's health and safety needs by not having seat belts in the transport vans. Richey also alleges NAES was criminally negligent by not providing him

---
[3] Richey signed the Complaint under penalty of perjury, per 28 U.S.C. § 1746.

5

adequate clothing or heat during transport.  Richey seeks declaratory relief, injunctive relief, and compensatory and punitive damages.

## II.     Defendant's Motion for Summary Judgment (DE #30)

On August 19, 2011, NAES filed a motion for summary judgment on each of Richey's claims.  DE #30 (Motion).  In response, Richey asserts that the relevant deprivations he alleges – Dilantin and seat belts – constitute cruel and unusual punishment in violation of the Eighth Amendment.  Finally, Richey claims his own declaration, his wife's declaration, and records from the Franklin County Jail create genuine disputes of material fact with respect to each of his claims.

### A.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[4]  A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).  Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

---

[4] By December 1, 2010, amendment, the language of the summary judgment standard changed. However, the language changes have not altered the standard itself.  *See* Fed. R. Civ. P. 56 advisory committee's note (2010) ("The standard for granting summary judgment remains unchanged.").  The Court applies the newest Rule 56 language here, finding, per the standard articulated in the United States Supreme Court's order adopting the rules amendments, application of the amended language to be just and practicable.

The burden of establishing the absence of a genuine issue of material fact rests initially with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex*, 477 U.S. at 324; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). Where, as here, the defendant is the moving party, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson*, 106 S. Ct. at 2514. However, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 106 S. Ct. at 2552.

A fact is "material" if the underlying substantive law identifies the fact as an essential element. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*; *cf. Matsushita*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'") (citation omitted). Such evidence must be capable of admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

B. Basis for Richey's Claims[5]

Although Richey contends he is not asserting his claims pursuant to 42 U.S.C. § 1983, the Court nonetheless construes the Complaint as necessarily made under that statute to the extent it asserts constitutional torts. Richey claims in Counts I and II that NAES violated the Eighth Amendment, made applicable to the states through the Fourteenth Amendment. Section 1983 provides the exclusive remedy for constitutional claims against state officials and local officials and units of government. *Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987), *vacated and remanded on other grounds*, 109 S. Ct. 859 (1989); *see also* 42 U.S.C. § 1983 (creating liability for depriving under color of state law another person "of any rights, privilege, or immunities secured by the Constitution").[6]

NAES attempts to cast Plaintiff's "criminal negligence" claim as a constitutional tort. This is a diversity case, and the Complaint expressly includes negligence as a recovery basis. In the *pro se* context, the Court liberally assesses the Complaint as setting forth a common-law gross or wanton negligence theory.[7] NAES gets this, as its Answer references to apportionment

---

[5] Courts must construe liberally *pro se* pleadings. *Boag v. McDougall*, 102 S. Ct. 700, 701 (1982).
[6] At this stage, NAES does not dispute that it was acting under color of state law. DE #30-1 (Memorandum), at 7. Thus, for purposes of this motion, the Court assumes NAES may be sued under § 1983 as a private entity that has contracted with the state to perform a state function. *See Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function … may be sued under § 1983 as one acting under color of state law.") (quotation omitted).
[7] In Kentucky, "criminal" negligence would equate to "wanton" negligence or negligence warranting punitive damages. *Cf.* KRS § 501.020(3) (defining "wantonly" for purposes of Kentucky Penal Code); *Senters v. Commonwealth*, 275 S.W.2d 786, 787-88 (Ky. 1955) (discussing degree of negligence required to support criminal conviction); *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, (Ky. 1985) (to justify punitive damages award,

and comparative fault show. DE #13, ¶¶ 25, 26. Further, the Complaint directly cites state law as the basis for Count III. DE #2, ¶¶ 3, 43. Notice pleading applies, and Richey's negligence allusions suffice as notice of that theory. Defendant did not present a summary judgment argument on the merits of a negligence claim, so as to Count III, the theory must proceed to a resolution at trial.

C.     Count I – Deliberate Indifference to Serious Medical Needs

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 97 S. Ct. 285, 291 (1976); *see also* U.S. Const. Amend. VIII (prohibiting infliction of cruel and unusual punishment). Although the Eighth Amendment applies only to post-conviction inmates, the Fourteenth Amendment guarantees equivalent rights to pretrial detainees.[8] *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). The deliberate-indifference standard of care is the same under either constitutional provision. *Id.* Actionable indifference may be manifested by denial of medical care or interference with prescribed treatment. *Id.* To prevail, the plaintiff must satisfy objective and subjective components of the claim, to wit: (1) the medical need must be sufficiently serious; and (2) the official being sued must have "subjectively perceived facts from which to infer substantial risk to the prisoner," actually drawn the inference, and then disregarded the risk. *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

NAES's entire argument here is via conclusory reliance on an affidavit from the Franklin County (Kansas) jail. DE #30, at 9 ("Here, the undisputed facts show that NAES did not deny Richey medication or medical care and so there is no basis for this claim."). Plainly, the record

---

negligence must be accompanied by "wanton or reckless disregard for the lives, safety or property of others").
[8] Neither party addresses which category would include Richey here—a detainee on a parole violation warrant.

9

defeats this argument. Richey averred that Franklin County placed him on seizure medicine and put him on seizure watch because of epilepsy. DE #40-1, ¶¶ 6, 7. Richey averred that NAES refused to take the medication with him during transport. *Id.* at ¶ 10. Richey testified that he told the NAES guard that he needed the medication: "I explained to him that I had epilepsy and that I had to have my medicine." Richey Depo. at 42. Defendant's simplification of the record is not persuasive.

The evidence of record is sufficient to preclude summary judgment as to Richey's claim that NAES acted with deliberate indifference when it refused to allow Richey to take Dilantin while he was being transported. NAES does not dispute that medication to treat epilepsy reflects a serious medical need, and the Court finds, at least for purposes of summary judgment, that it does. *Accord Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). With respect to the second element, critically, NAES does not dispute, with record evidence, that Richey told its employees he had epilepsy and needed to take Dilantin to prevent seizures, and the employees nonetheless refused to administer Dilantin to Richey. NAES also does not dispute Richey's claim that he suffered two seizures en route from Kansas to Mississippi and received no treatment. These facts, if true, are sufficient to state an Eighth Amendment claim. Richey avers that he has epilepsy, was taking Dilantin, communicated the need to NAES, and suffered seizures because of NAES's knowing denial. The disputed issues are triable here. *Cf. id.* (reversing summary judgment in favor of defendant on similar facts).

NAES's only argument is that Richey did not actually have prescription medication. This is a matter in dispute, as Richey has averred that Franklin County gave him Dilantin, that his girlfriend could have brought the pills, and that NAES categorically refused to accept

medications. The post-seizure care and medicine refusal buttress Plaintiff's theory. Accordingly, the Court recommends the District Court **DENY** NAES's motion as to Count I.

  D.  <u>Count II – Deliberate Indifference to Health and Safety Needs</u>

  The Eighth and Fourteenth Amendments require that prison officials "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 104 S. Ct. 3194, 3200 (1984); *see also Ford*, 535 F.3d at 495 (Fourteenth Amendment guarantees to pretrial detainees rights equivalent to those guaranteed post-conviction inmates by Eighth Amendment). However, "a failure to provide seatbelts does not, by itself, constitute a substantial risk of serious harm rising to the level of a constitutional violation." *Shepard v. Daviess Cnty. Det. Ctr.*, Civil Action No. 4:10CV-105-M, 2011 WL 9342, at *6 (W.D. Ky. Jan. 3, 2011) (citing cases) (unpublished opinion). Like the plaintiff in *Shepard*, Richey does not allege the NAES drivers drove recklessly. *See id.*; *see also Ingram v. Herrington*, Civil Action No. 4:06-CV-P65-M, 2007 WL 2815965, at *4-5 (W.D. Ky. Sept. 26, 2007) (refusing to buckle prisoner into van and driving negligently did not violate Eighth Amendment) (unpublished opinion). Richey posits that the Constitution requires restraints, but the cases do not treat restraint absence alone as sufficient to trigger liability. Plaintiff offers nothing more, and the argument fails.[9] As a matter of law, the lack of or failure to fasten seat belts in the transport van does not violate the Eighth or Fourteenth

---

[9] In his **deposition**, Richey claims he suffered injury to his left hand and arm as a result of being handcuffed and shackled for too long. Richey Depo. at 66. Richey did not raise that allegation in his Complaint, and in any event, the Court is skeptical that Richey could prevail on such a claim. To survive summary judgment on an excessive-force handcuffing claim, "a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury resulting from the handcuffing.'" *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)). The record contains no evidence that Richey complained regarding the duration of his restraint or that NAES employees disregarded his complaints. The claim is not in the case, but if it were, NAES would prevail on this record.

Amendment. Accordingly, the Court recommends the District Court **GRANT** NAES's motion as to Count II.[10]

IV. **Richey's Motion for Leave to Amend (DE #32)**

On August 22, 2011, Richey filed a motion for leave to amend the complaint to add as defendants the four NAES employees who transported him from Kansas to Mississippi and Mississippi to Kentucky. DE #31 (Motion). He also alleges for the first time (and contrary to his deposition testimony) in the proposed amended complaint that he suffered a third seizure during the trip from Mississippi to Kentucky. DE #31-1 (proposed Amended Complaint), ¶¶ 35-

---

[10] Richey does not allege that the temperature inside the vans and the adequacy of clothing NAES provided to him rose to the level of constitutional violations, instead raising those issues under a negligence theory. As stated above, Richey may proceed to trial on the negligence claim. In full fairness to Richey, the Court nonetheless has also considered the allegations in the context of a deliberate indifference claim and finds such a claim, if asserted, would likely be triable on this record. In the Sixth Circuit, allegations "that prison officials, acting with deliberate indifference, exposed [plaintiff] to temperatures that were close to freezing and failed to provide him adequate clothing and blankets …. are sufficient to state a violation of the Eighth Amendment prohibition against infliction of cruel and unusual punishment." *Franklin v. Franklin*, No. 97-4365, 2000 U.S. App. LEXIS 11629, at *10 (6th Cir. May 16, 2000). NAES relies on two unpublished decisions from the Middle District of Tennessee, both of which concerned allegations that transport vans were either "extremely" hot or cold. *Myers v. Transcor Am., LLC*, No. 3:08-0295, 2010 WL 3619831 (M.D. Tenn. Sept. 9, 2010); *Bain v. Transp. Corp. of Am.*, NO. 3:08-0656, 2009 U.S. Dist. LEXIS 109758 (M.D. Tenn. Nov. 4, 2009). In determining the alleged conditions did not rise to the level of a constitutional violation, the court in both cases focused on the lack of an actual or serious risk of injury and the temporary nature (no more than two days) of the exposure. *Myers*, 2010 WL 3619831, at *9; *Bain*, 2009 U.S. Dist. LEXIS 109758, at *10 (alleged shivering and excessive perspiring insufficient). The *Bain* court also found significant the fact that the plaintiff admitted the temperature fluctuations were caused by a malfunction in the van's thermostat. *Bain*, 2009 U.S. Dist. LEXIS 109758, at *11. In contrast, Richey claims, through the record evidence, that the temperature inside the prisoner area of the van was far below freezing, Richey was transported in that condition for eight days, and Richey suffered frostbite on his foot, with permanent scarring, as a result of the exposure. NAES provided no additional clothing to Plaintiff, who wore shorts and flip-flops in a van area where soda froze on the floor. Under these facts, Richey could satisfy the objective prong of a constitutional claim. Richey also alleges he told at least one NAES employee during the trip from Kansas to Mississippi that he was freezing and had no shoes. Nonetheless, NAES did not give Richey a blanket or any additional clothing. NAES presents no evidence to contradict Richey's allegations in this regard, and Richey thus could also satisfy, for purposes of summary judgment, the subjective element of a deprivation claim. The Court finds the theory absent from the Complaint, but NAES argued the matter.

12

38. NAES opposes the motion to amend because, although the Scheduling Order in this case (DE #14) does not establish a deadline for amending pleadings, Richey filed the motion after the deadline for dispositive motions had passed. NAES also objects to Richey's addition of the individual defendants and the allegation that he suffered a seizure on the second leg of his trip.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Moreover, this Court has "a responsibility to construe pro se complaints liberally and to allow ample opportunity for amending the complaint when it appears that the pro se litigant would be able to state a meritorious claim." *McCallum v. Gilless*, 38 F. App'x 213, 216 (6th Cir. 2002). Specifically, "refusal to grant a pro se plaintiff leave to amend to add the names of the appropriate individual officer defendants[] is 'widely recognized as an abuse of discretion.'" *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998) (quoting *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 556-57 (7th Cir. 1996)); *cf. Berndt v. State of Tenn.*, 796 F.2d 879, 882-83 (6th Cir. 1986) (remanding to permit *pro se* plaintiff to amend complaint to name individual defendants, despite fact that plaintiff did not move to amend).

As discussed above, Richey can state a meritorious claim with respect to the refusal to administer Dilantin and the temperature inside the transport van. NAES does not argue the amendment is brought in bad faith, for dilatory purposes, or results in undue delay or prejudice to NAES. *Cf. Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) ("A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.") Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Richey's motion, but only as to Counts

I and III. Because, as discussed above, Richey cannot establish a meritorious claim under Count II, the Court **RECOMMENDS** the District Court **DENY** the motion as it pertains to that count.[11]

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by section 636(b)(1) and Rule 72(b), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for *de novo* consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b) normally waives a party's right to review.

This the 3rd day of January, 2012.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge

---

[11] The Court notes a significant doubt over whether this District will have personal jurisdiction over the individuals—that remains to be seen. Also, the Court would be unlikely to allow further amendment to name the last two drivers, because Richey has not explained the failure to name them now.